IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Julian D. Owens, | ) | C/A No. 3:18-547-DCC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER AND** |
| University of South Carolina; Harris Pastides; | ) | **REPORT AND RECOMMENDATION** |
| Michael Amiridis; Lacy Ford; Murray Mitchell; | ) | |
| Lillian Smith; Ken Watson; Heather Brandt; | ) | |
| Katrin Waslsemann; Jim Thrasher; Ruth | ) | |
| Saunders; G. Tom Chandler; Samantha Shofar; | ) | |
| David Hensel; Cheryl Addy; South Carolina | ) | |
| Insurance Reserve Fund; Ed Frongillo; United | ) | |
| States Department of Education's Office of Civil | ) | |
| Rights; United States Office of Post-Secondary | ) | |
| Education; Council on Education for Public | ) | |
| Health, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

The plaintiff, Julian D. Owens, proceeding *pro se*, filed this action pursuant to 28 U.S.C. § 1915. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). By order dated April 6, 2018, the court authorized the issuance and service of process against Defendants Murray Mitchell, Lillian Smith, and Katrin Waslsemann. (ECF No. 20.) The court also issued a contemporaneous Report and Recommendation that recommended summary dismissal of the other defendants named in the Complaint pursuant to 28 U.S.C. § 1915. (ECF No. 19.)

Plaintiff has now filed an Amended Complaint that raises new claims against the summarily dismissed defendants and adds two new defendants.[1] (ECF No. 58.) Plaintiff has also filed a motion to amend the Amended Complaint that seeks to reassert the claims pursuant to Bivens v. Six Unkown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1983 and accompanying facts against the defendants that were recommended for dismissal in the court's original Report and Recommendation.[2] (ECF No. 80.) Having reviewed the Amended Complaint pursuant to 28 U.S.C. § 1915, the court recommends the Amended Complaint be summarily dismissed.

The defendants who were served—Murray Mitchell, Lillian Smith, and Katrin Waslsemann—answered and filed motions to dismiss. (ECF Nos. 31, 32, & 45.) Plaintiff filed responses to the motions, (ECF Nos. 71, 72, & 73), and the defendants replied, (ECF Nos. 74, 75, & 76.) Having reviewed the record presented and the applicable law, the court finds the motions should be granted.

**BACKGROUND**

The following allegations are taken as true for purposes of resolving the defendants' motions to dismiss. Plaintiff, who is African American, was formerly enrolled in two doctoral programs at

---

[1] The new defendants are Cheryl Addy and the South Carolina Insurance Reserve Fund.

[2] In this motion, Plaintiff indicates he intended that his original complaint would remain in effect. But see Young v. City of Mount Ranier, 238 F.3d 567, 572 (4th Cir. 2001) ("As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect.") (internal quotation marks omitted); 6 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2682 (3d ed. 2018). Indeed, Plaintiff's Amended Complaint does not include any claims against the served defendants, and the causes of action raised in the Amended Complaint do not appear in the original complaint. Accordingly, Plaintiff's motion to amend is granted to the extent he seeks to incorporate his original complaint into the Amended Complaint. Thus, the court treats the original complaint as part of the Amended Complaint below.



the University of South Carolina ("the University"), in which he alleges officials discriminated against him based on his race, age, and disability, and retaliated against him.[3]  Plaintiff enrolled in the Arnold School of Public Health, Department of Health Promotion, Education, and Behavior ("Public Health Program"), pursuing a Ph.D., in the fall 2010 semester.  (Compl., ECF No. 1-1 at 1.)  Plaintiff's advisor in that program was Defendant Lillian Smith.  (Id.)  Plaintiff alleges Smith "misadvised and belittled" him on numerous occasions.  (Id.)  Specifically, Plaintiff claims Smith advised him to take the second part of a statistics course, without Plaintiff's having taken the first, foundational part of the course, whereas Plaintiff's younger, non-African-American colleagues were advised appropriately.  (Id.)  Plaintiff also alleges Smith made demeaning statements about his age during advisory meetings, and made condescending statements about him in front of Plaintiff's colleagues.  (Id. at 1, 3.)  Plaintiff claims Smith convened a meeting with the Public Health Program's leaders to intimidate him by discussing concerns about how he was perceived as a threat to the program's faculty.  (Id. at 3.)  Plaintiff also claims that Defendant Katrin Waslsemann, one of his professors and a member of the doctoral committee, made derogatory and disparaging comments to Plaintiff's colleagues about him.  (Id. at 3.)

Plaintiff further alleges that when he enrolled in the Public Health Program, the student handbook indicated that the doctoral qualifying exam would be an open-book, take-home exam that he would have seven days to complete.[4]  (Id. at 2.)  Plaintiff claims Smith assured him that the student handbook's requirements would be "frozen" during his time in the Public Health Program,

---

[3] Plaintiff first raised the disability claim in his Amended Complaint.  Plaintiff does not specify what disability he has, though he appears to claim that his test-taking anxiety is a disability.

[4] Plaintiff indicates the doctoral qualifying exam was a prerequisite to graduating from the program.  (Am. Compl., ECF No. 58 at 3.)

Page 3 of 17



so that he would be grandfathered in to any policy changes. (Id.) But, Plaintiff claims that during his enrollment, the format of the doctoral qualifying exam changed to a proctored and timed exam, which Plaintiff warned would trigger his test anxiety.[5] (Id.) Plaintiff indicates he twice failed the exam. (Id. at 3.) Plaintiff claims that his fellow students that were younger and not African American that had the same exam results as he were "conditionally" passed and given one week to address the exam grader's concerns from home, in an open-book format, whereas Plaintiff was denied those opportunities. (Id.)

Plaintiff indicates he was "administratively withdrawn" from the Public Health Program some time between December 2012 and September 2013. (Id. at 3.) Plaintiff filed a complaint in the University's Office of Equal Opportunity Programs alleging age and race discrimination, but the complaint was denied. (Id. at 3-4.) Plaintiff appealed the denial to Defendant G. Tom Chandler,[6] Dean of the Arnold School of Public Health; Defendant Murray Mitchell, the Associate Dean of the University's Graduate School; and Defendant Michael Amiridis,[7] Executive Vice President for Academic Affairs and Provost. (Id. at 4.) The appeals were denied. (Id.)

At some point in 2013, Plaintiff indicates he enrolled in a doctoral program in the University's College of Education Teaching and Learning Program ("Teaching Program"). (Id. at 5.) Plaintiff indicates that even after his program of study was approved by the then Dean of the Graduate School—Defendant Lacy Ford—Defendant Murray Mitchell subjected it to "unprecedented

---

[5] Plaintiff indicates that Defendants Heather Brandt, Ruth Saunders, Jim Thrasher and Walsemann constituted the Public Health Program Committee that decided to change the doctoral qualifying exam format. (Am. Compl., ECF No. 58-6 at 4.)

[6] This defendant is also referred to as "Thomas Chandler" in the Complaint.

[7] This defendant's name is also spelled "Amiritis" in the Complaint.

PJG

scrutiny." (Id.)  He alleges Mitchell used a racial slur in describing him. (Id.)  He also alleges Mitchell required "unprecedented oversight" of the dissertation committee that reviewed his dissertation, and of his academic advisor. (Id.)

Plaintiff graduated from the Teaching Program in 2015, but at his hooding ceremony, his name was left off of the ceremony's program, and Ford refused to have the program reprinted. (Id.) Plaintiff indicates he filed complaints about the aforementioned issues with the University to Defendant United States Department of Education's Office of Civil Rights and Office of Post-Secondary Education, and with Defendant Council on Education for Public Health,[8] but no action was taken in response to the complaints. (Id. at 6-7.)  Plaintiff alleges these offices and their officials—Defendants Shofar and Hensel—failed to conduct a thorough and impartial investigation of Plaintiff's complaints. (Am. Compl., ECF No. 58-3 at 6.)

Plaintiff asserts that all of the foregoing has caused him "significant harm and substantial damage to me personally and professionally." (Compl, ECF No. 1 at 7.)  Specifically, he claims that his career and projected earnings have changed because he did not receive a Ph.D. in public health. (Id.)  He also asserts his emotional, financial, and psychological well-being has been negatively impacted by these events and a hostile environment. (Id.; Mot. to Amend, ECF No. 80 at 2.)  In his original complaint, Plaintiff indicates that he brings this action pursuant to Bivens v. Six Unkown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), and 42 U.S.C. § 1983, raising claims of discrimination based on age and race, and retaliation. (Compl., ECF No. 1 at 3, 7.)  He expressly indicates the individual defendants are named in their individual capacities only, and he seeks

---

[8] This defendant is also listed in the Complaint as "Council on Education in Public Health" but it appears the defendant is properly identified as "the Council on Education for Public Health."

damages. (Id. at 2, 8.) In his Amended Complaint, Plaintiff also brings state law claims of breach of contract, promissory estoppel, fraudulent misrepresentation, negligent misrepresentation, and intentional infliction of emotional distress. In his Amended Complaint, Plaintiff also reiterates his federal claims of race and age discrimination, and adds a disability discrimination claim.

## DISCUSSION

**A.     Plaintiff's Amended Complaint**

    **1.     Applicable Standard**

Under established local procedure in this judicial district, a careful review has been made of the *pro se* Amended Complaint. The Amended Complaint has been filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without prepaying the administrative costs of proceeding with the lawsuit. This statute allows a district court to dismiss the case upon a finding that the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

In order to state a claim upon which relief can be granted, the plaintiff must do more than make mere conclusory statements. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. The reviewing court need only accept as true the complaint's factual allegations, not its legal conclusions. Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555.

This court is required to liberally construe *pro se* complaints, which are held to a less stringent standard than those drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); King

*PJG*

v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Iqbal, 556 U.S. at 684 (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

### 2. Federal Law Claims

Plaintiff indicates he brings claims of discrimination based on race, age, and disability, and retaliation pursuant to 42 U.S.C. § 1983[9] and Bivens v. Six Unkown Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).[10]

In the April 6 Report and Recommendation, the court recommended that the original defendants (except for Murray Mitchell, Lillian Smith, and Katrin Waslsemann) be summarily

---

[9] A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48 (1988).

[10] In Bivens, the United States Supreme Court established a remedy for plaintiffs alleging certain constitutional violations by federal officials to obtain monetary damages in suits against federal officials in their individual capacities. Based on Bivens, courts have recognized that neither federal agencies nor federal officials in their official capacities can be sued for monetary damages in a Bivens action. F.D.I.C. v. Meyer, 510 U.S. 471, 483-86 (1994) (holding that a Bivens action cannot lie against a federal agency); Doe v. Chao, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a Bivens action does not lie against either agencies or officials in their official capacity"); Randall v. United States, 95 F.3d 339, 345 (4th Cir. 1996) ("Any remedy under Bivens is against federal officials individually, not the federal government."). The Supreme Court recently emphasized the limited scope and availability of Bivens actions. See Ziglar v. Abbasi,137 S. Ct. 1843, 1857 (2017) (noting that the United States Supreme Court has extended Bivens only in limited circumstances, and cautioning that a Bivens remedy will not be available if there are "special factors counselling hesitation in the absence of affirmative action by Congress") (quoting Carlson v. Green, 446 U.S. 14, 18 (1980)).

dismissed for Plaintiff's failure to state a claim upon which relief can be granted as to Plaintiff's Bivens and § 1983 claims. Here, the court incorporates the analysis from that Report and Recommendation because the Amended Complaint does not provide any *new* allegations that would change the court's analysis as to those claims. At most, Plaintiff adds allegations that these defendants knew about or "endorsed" discriminatory behavior. For example, Plaintiff alleges Defendants Addy, Amiridis, Ford, Pastides, Chandler, Frongillo, and Watson knew that Plaintiff was treated differently because of his race, and that they "acquiesced, actively or passively cosigned, or endorsed" such conduct. (Am. Compl., ECF No. 58 at 50; ECF No. 58-2 at 45.) But Plaintiff fails to provide specific facts that support these conclusory allegations. And, as explained in the court's previous Report and Recommendation, Plaintiff must show that the defendants were personally involved in violating Plaintiff's constitutional rights. See Iqbal, 556 U.S. at 676 (providing that a plaintiff in a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution); Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) ("In order for an individual to be liable under § 1983, it must be 'affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights. The doctrine of *respondeat superior* has no application under this section.' ") (quoting Vinnedge v. Gibbs, 550 F.2d, 928 (4th Cir. 1977)). In other words, Plaintiff's Amended Complaint fails to correct the deficiencies identified by the court on April 6 as to the original defendants.

As to the new defendants—Cheryl Addy and the South Carolina Insurance Reserve Fund—the court finds that Plaintiff's federal claims against them should be dismissed for the same reasons as the original defendants. Specifically, Plaintiff fails to allege any facts about Cheryl Addy that would plausibly show that she was personally involved in the denial of Plaintiff's constitutional

rights. See Iqbal, 556 U.S. at 676; Wright, 766 F.2d at 850. To the extent Plaintiff claims that Addy's involvement in denying the appeals of Plaintiff's complaint to the University's Office of Equal Opportunity Programs is the basis for a § 1983 claim for discrimination or retaliation, Plaintiff fails to allege any facts that would plausibly show that her actions were discriminatory or retaliatory. Thus, Plaintiff's federal claims against Cheryl Addy should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Also, Plaintiff's federal claims against the South Carolina Insurance Reserve Fund should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii) for the same reasons that the court recommended dismissing the University—those entities of the State of South Carolina are immune from suit under the Eleventh Amendment. See Alden v. Maine, 527 U.S. 706, 712-13 (1999); Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54 (1996); Hans v. Louisiana, 134 U.S. 1 (1890); see also Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984).

3. **State Law Claims**[11]

a. **Breach of Contract; Promissory Estoppel**

Plaintiff raises state law claims of breach of contract against Defendants Pastides, Amiridis, Ford, Addy, Watson, Frongillo, Chandler, Brandt, Thrasher, Sanders, the University, and the South Carolina Insurance Reserve Fund, and claims of promissory estoppel against all of the defendants named in the Amended Complaint. "In an action for breach of contract, the burden is on the plaintiff to prove the contract, its breach, and the damages caused by such breach." Allegro, Inc. v.

---

[11] The facts in the original complaint indicate that the court has diversity jurisdiction over these state law claims because Plaintiff indicates he is a resident of Virginia, and the defendants are residents of or entities based in South Carolina, Maryland, and Washington, D.C. (Compl., ECF No. 1 at 1-2.)

PJG

Scully, 791 S.E.2d 140, 145 (S.C. 2016) (citing Maro v. Lewis, 697 S.E. 2d 684, 688 (S.C. Ct. App. 2010)).  On the other hand, promissory estoppel is a quasi-contractual remedy.  N. Am. Rescue Prods., Inc. v. Richardson, 769 S.E.2d 237, 241 (S.C. 2015).  "The elements of promissory estoppel are (1) an unambiguous promise by the promisor; (2) reasonable reliance on the promise by the promisee; (3) reliance by the promisee was expected by and foreseeable to the promisor; and (4) injury caused to the promisee by his reasonable reliance." Id.

With the exception of the University, Plaintiff fails to plausibly allege facts that would show that he had a contract with any of these defendants, or that any promises were made to him by these defendants.[12]  See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570.  Thus, Plaintiff fails to state a claim upon which relief can be granted for these claims as to all of the defendants except the University.  Moreover, even assuming Plaintiff alleged facts about the University that would plausibly show it is liable to Plaintiff for breach of contract or promissory estoppel, the University is immune from suit in federal court under the Eleventh Amendment, as explained above.  See also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, (1997) (finding the plaintiff's breach of contract action against a state university was barred by the Eleventh Amendment); Peterson v. Davidson Cty. Comty. Coll., 367 F. Supp. 2d 890, 893 (M.D.N.C. 2005).  Accordingly, Plaintiff's breach of contract and promissory estoppel claims should be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii).

---

[12] Plaintiff appears to argue that the promise or representation on which he relied was that the doctoral qualifying exam requirements would remain in place during his matriculation in the Public Health Program.  This assertion would appear to be potentially viable only against the University.



### b. Fraudulent Misrepresentation; Negligent Misrepresentation; Intentional Infliction of Emotional Distress

Plaintiff raises state law tort claims of fraudulent misrepresentation against Defendants Pastides, Amiridis, Ford, Addy, Watson, Frongillo, Chandler, Brandt, Thrasher, Sanders, the University, and the South Carolina Insurance Reserve Fund, and negligent misrepresentation and intentional infliction of emotional distress against all of the defendants named in the Amended Complaint.[13]

"To establish liability for negligent misrepresentation, the plaintiff must show by a preponderance of the evidence: (1) the defendant made a false representation to the plaintiff; (2) the defendant had a pecuniary interest in making the representation; (3) the defendant owed a duty of care to see that he communicated truthful information to the plaintiff; (4) the defendant breached that duty by failing to exercise due care; (5) the plaintiff justifiably relied on the representation; and (6) the plaintiff suffered a pecuniary loss as the proximate result of his reliance on the representation. Turner v. Milliman, 708 S.E.2d 766, 769 (S.C. 2011). "[W]here one promises to do a certain thing, having at the time no intention of keeping his agreement, it is a fraudulent misrepresentation of a fact, and actionable as such." Id. at 770.

---

[13] Notably, Plaintiff does not expressly indicate that he brings any claims pursuant to the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-10, *et. seq.*, or Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680, 1346(b). To the extent these claims are brought against agencies of the State of South Carolina, or employees of the state acting in their official capacity, such claims must be brought pursuant to the SCTCA. Moreover, he cannot pursue a SCTCA claim in this forum, as explained in more detail below. See SCTCA, S.C. Code Ann. § 15-78-20(e). As to any tort claim he may be asserting against a federal defendant, he has not alleged any facts showing jurisdiction or sued the proper defendant under the FTCA. See Plyler v. United States, 900 F.2d 41, 42 (4th Cir. 1990); see also 28 U.S.C. § 1346(b); F.D.I.C. v. Meyer, 510 U.S. 471 (1994).

"To recover for outrage—otherwise known as intentional infliction of emotional distress—a plaintiff must establish the following: (1) the defendant intentionally or recklessly inflicted severe emotional distress, or was certain, or substantially certain, that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' so as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' such that 'no reasonable man could be expected to endure it.'" Bass v. S.C. Dep't of Soc. Servs., 780 S.E.2d 252, 260–61 (S.C. 2015) (quoting Argoe v. Three Rivers Behavioral Health, L.L.C., 710 S.E.2d 67, 74 (S.C. 2011)).

Similar to the court's analysis of Plaintiff's breach of contract and promissory estoppel claims, Plaintiff fails to plausibly allege that these defendants (other than the University) made a false representation or promise to Plaintiff. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 570. As to Plaintiff's intentional infliction of emotional distress claim, Plaintiff fails to allege facts plausibly showing that he has suffered "severe" emotional distress, or that any action of the defendants caused Plaintiff any injury by way of "extreme and outrageous" conduct. Id. Thus, Plaintiff's state law tort claims against these defendants should be dismissed for failure to state a claim upon which relief can be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

As to the University, it is again entitled to immunity from suit pursuant to the Eleventh Amendment, even for claims brought pursuant to the SCTCA. See SCTCA, S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United

PJG

States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina."). Accordingly, Plaintiff's state law tort claims should be dismissed.

**B.      Defendants' Motions to Dismiss**

   **1.      Applicable Standard**

To survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). A claim is facially plausible when the factual content allows the court to reasonably infer that the defendant is liable for the misconduct alleged. Id. When considering a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint. Erickson, 551 U.S. at 94. The court "may also consider documents attached to the complaint, see Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Philips v. Pitt Cty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n.1 (4th Cir. 2006)).

Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, see, e.g., Erickson, 551 U.S. 89, the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. Weller, 901 F.2d at 387.

PJG

2.   Analysis

By order dated April 6, 2018, the court authorized the issuance and service of process against Defendants Murray Mitchell, Lillian Smith, and Katrin Waslsemann, and construed the Complaint as asserting claims pursuant to 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment and retaliation. (ECF No. 20.)   A legal action under 42 U.S.C. § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey, 526 U.S. at 707.  Defendants Mitchell, Smith, and Walsemann all move to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted, arguing Plaintiff's claims are barred by the statute of limitations.  The court agrees.[14]

The applicable statute of limitations for a § 1983 claim arising in South Carolina is three years.  See Owens v. Okure, 488 U.S. 235 (1989); S.C. Code Ann. § 15-3-530(5).  A federal cause of action accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (*en banc*); see also Gould v. U.S. Dep't of Health & Human Servs., 905 F.2d 738, 742 (4th Cir. 1990) (holding that federal law determines when a claim accrues).

Here, Plaintiff filed this Complaint on February 23, 2018.  Plaintiff does not give specific dates for many of his allegations of discriminatory or retaliatory behavior by the defendants.  But even assuming Plaintiff's claims did not accrue until the defendants' most recent behavior alleged by Plaintiff, that behavior occurred more than three years prior to Plaintiff filing the Complaint.  As

---

[14] Defendants also argue that Plaintiff fails to state a claim upon which relief can be granted because he fails to allege facts that would plausibly establish a claim for relief for discrimination or retaliation, and Defendants argue they are entitled to qualified immunity.  In light of the court's finding that Plaintiff's claims are barred by the statute of limitations, the court need not reach these issues.

*PJG*

to Mitchell, Plaintiff alleges she "intentionally stalled progress" on Plaintiff's program of study for five months, ending in October 2014 when his program of study was approved by a different dean. (Compl., ECF No. 1-1 at 5.) As to Walsemann, Plaintiff alleges she made derogatory and disparaging comments about Plaintiff to Plaintiff's colleagues sometime between 2011 and 2012. (Id. at 2-3.) And as to Smith, Plaintiff alleges she made demeaning and condescending statements about Plaintiff's age to Plaintiff's colleagues and changed the format of the doctoral qualifying exam between 2011 and 2012. (Id.) Because none of Plaintiff's allegations about these defendants occurred beyond October 2014, the statute of limitations clearly bars Plaintiff's claims here.

In response, Plaintiff argues he is entitled to tolling. He claims he has exercised reasonable diligence in investigating and bringing his claims, but he fails to assert how. (Pl.'s Resps. in Opp'n, ECF Nos. 71 at 3, ECF No. 72 at 3, ECF No. 73 at 3.) See generally Hooper v. Ebenezer Senior Servs. and Rehab. Ctr., 687 S.E.2d 29, 32-33 (S.C. 2009) (providing equitable tolling generally applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond the litigant's control, and suggesting other situations in which equitable tolling may apply); see also Bd. of Regents of Univ. of State of N.Y. v. Tomanio, 446 U.S. 478, 483-84 (1980) (providing federal courts borrow statutes of limitation and tolling rules from states where no federal rule applies). Plaintiff provides no facts to support his assertion that he exercised reasonable diligence in bringing his claims. See Hooper, 687 S.E.2d at 32. Thus, Plaintiff is not entitled to

*PJG*

invoke tolling, and his claims against Defendants Mitchell, Smith, and Walsemann are barred by the applicable statute of limitations.[15]

**RECOMMENDATION**

The court recommends Plaintiff's Amended Complaint be summarily dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) & (iii). (ECF No. 58.) The court also recommends Defendants Mitchell, Smith, and Walsemann's motions to dismiss be granted. (ECF Nos. 31, 32, & 45.)

          _____
          Paige J. Gossett
          UNITED STATES MAGISTRATE JUDGE

July 26, 2018
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[15] In his responses to Defendants Mitchell, Smith, and Walsemann's motions to dismiss, Plaintiff appears to add several new claims against these defendants, similar to those raised in his Amended Complaint against the other defendants. In his motion to amend (granted only in part above), (ECF No. 80), Plaintiff indicates he seeks to amend the Amended Complaint to add the claims raised in his responses against Defendants Mitchell, Smith, and Walsemann. In this regard, Plaintiff's motion to amend is denied because it is futile. See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 376 (4th Cir. 2008) ("Under Rule 15 of the Federal Rules of Civil Procedure, a court should freely give leave when justice so requires. Although such motions should be granted liberally, a district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.") (internal citations and quotation marks omitted). To the extent the amendment adds allegations concerning Plaintiff's § 1983 claims against Defendants Mitchell, Smith, and Walsemann, Plaintiff's claims would still be barred by the statute of limitations. And to the extent Plaintiff seeks to raise state law contract and tort claims against Defendants Mitchell, Smith, and Walsemann, Plaintiff would fail to state a claim upon which relief can be granted for the same reasons relied upon by the court to summarily dismiss these claims against the other individual defendants.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).